MARGARET E. BRINK, ADMINISTRATRIX, &c., OF THOMAS P. BRINK, DECEASED, v. NORTH JERSEY STREET RAILWAY COMPANY ET AL.

Argued February 27, 1907—Decided September 11, 1907.

A man on a cold night, lying upon a trolley track, was pushed some four feet by the fender of a slowing-down car. He was found to have a fractured skull, and died four days later. The deceased was on that night driving an open ice-wagon, and his team was seen going at a slow trot, driverless, a short distance from where he

lay. *Held*, that his condition of involuntary unconsciousness or helplessness raised so strong a presumption that the injury existed before the impact of the fender of the car that a verdict for the plaintiff should be set aside.

On rule to show cause why a new trial should not be granted.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRETSON and REED.

For the defendants, *Alvah A. Clark*.

For the plaintiff, *Jeremiah A. Kiernan*.

The opinion of the court was delivered by

REED, J. The plaintiff, as administratrix of her husband, Thomas P. Brink, brought this action to recover damages resulting from the death of her husband by reason of alleged negligence of the servants of the defending company.

It appears that the deceased, on the morning of February 2d, 1906, about half-past nine o'clock, with a team hitched to an open ice-wagon, started out from the city of Elizabeth. About eight thirty o'clock in the evening of that same day a Mr. Prindle, who was driving toward Orange along Frelinghuysen avenue, met a team and wagon, which he recognized as that of the deceased, without a driver. The team was on a jog trot. Shortly after he passed this wagon he saw an object lying on the track of the defendant, whose trolley road runs along Frelinghuysen avenue. He also saw a trolley car approaching, the fender of which car, he says, struck the object; which object he discovered to be a man. When the fender struck the object he says he heard a sound like a groan. He also says that the car was stopped after it pushed the man about four feet. It appears that the man was taken to Saint Barnabas Hospital in Newark, where he died four days later.

An autopsy disclosed a fracture of the inner table of the skull extending from about two inches above the left ear downward to the base of the skull. There was hemorrhage

between the skull and the membrane which covers the brain, and the brain on the left side was badly torn. The death of the deceased resulted from this fracture of the skull and this injury to the brain. The trial of the case resulted in a verdict for the plaintiff.

The defendants insist that from the fact that the deceased was lying upon the track such negligent conduct must be imputed to him as will defeat his right to recover.

It goes without saying that if the deceased voluntarily placed himself upon the track, or permitted himself to be so placed, it would present a case of gross negligence contributing to the injury from which he suffered. Therefore the plaintiff insists that the presence of the deceased upon the track was not the result of a voluntary act. Indeed, there is nothing to show that the deceased voluntarily did anything from which negligence could be imputed to him.

The defendants next insist that the evidence fails to show that the motorman of defendants' car was negligent. But assuming, for the purpose of the case, that from the testimony the jury could have inferred that the motorman, by the exercise of a reasonable degree of care, could have arrested the progress of the car before it reached the place where the deceased was lying, there remains another question. This question is whether the jury could reasonably conclude that the death of the deceased was caused by any violence inflicted by this car. The burden of showing this by preponderance of evidence was upon the plaintiff.

The testimony discloses that the car was stopped within three or four feet after reaching the place where the deceased lay. Whether the body was pushed three or four feet, or whether the fender struck and passed over the body, it is clear that the car had slowed down to a low degree of speed at the moment of the collision. The weight of the body was so slight in comparison with the weight of the car that the resistance of the body must have been imperceptible in arresting the motion of the car. The car must have almost reached a state of inertia when the fender touched the body of the deceased.

Again, while the description of the fender and its distance from the ground is not stated with exactness, it appears that, after running down from the front of the car, the fender took an upward curve. If this fender was similar to the fenders in ordinary use it would seem highly improbable that the front of the fender would have administered a direct blow upon the head of a man lying prone upon the ground similar to that exhibited upon the head of the deceased. Nor is the fact, if true, that the deceased was heard to groan evidential that the fatal blow was struck at that moment, for the compression of the lungs by the pressure of the fender upon the body would cause an expiration of air producing a sound similar to a groan.

Notwithstanding the considerations just mentioned, it may be conceded that if it were clear that the deceased was uninjured when lying upon the ground just before the collision it might be inferred that the wound found upon the body must have been caused by the impact of the fender upon his head. But it is not clear that the deceased was free from this wound before the collision. On the contrary, it is in the highest degree probable that his presence upon the track was attributable to his disabled condition resulting from this injury.

As already observed, the insistence of the plaintiff necessarily is that the presence of the deceased upon the track was involuntary. The plaintiff scouts the notion that it was the result of intoxication, and the trial judge charged the jury that if the deceased became voluntarily intoxicated and placed himself upon the track, the plaintiff could not recover, so that feature is eliminated from the case upon this rule.

The counsel for the plaintiff, thus compelled to take the ground that the deceased's prostrate condition at this obvious place of danger was one assumed involuntarily, naturally propounds a theory to account for this situation. This theory is that the deceased was walking alongside his wagon and was overcome by the cold, and became bewildered or sick, and in that condition lay down upon the trolley track. This theory, disconnected from any injury received while falling upon the track, seems to be incredible. It was a cold night, but the

physician says the deceased was warmly clothed. It is improbable that a man in motion, walking alongside his wagon, driving his team, would have become so paralyzed by the cold as to fall helpless upon the ground and lie there oblivious of the danger of his position, or so helpless as not to be able to creep out of the path of obvious danger. Still less reasonable is it to suppose that sudden sickness brought about a similar situation.

Nevertheless, the deceased was admittedly lying upon the track of the trolley company unconscious of danger. Eliminating volition from the conduct of the deceased, what could have caused his helpless condition? The theory of the counsel for plaintiff is entirely unsatisfactory. If, however, the deceased had already received the brain injury which caused his death the problem is solved, and the cause of his unconsciousness of danger is at once manifest.

The deceased might have received his injury from the two men who were seen by the motorman running from the place where the man lay.

A more probable theory is that he was injured by falling while attempting to alight from his wagon for some purpose. He may have become chilled and, thinking to warm himself by walking, may have tried to step down from the wagon-seat, and his limbs having become cramped and stiffened by the cold and his sustained position, he stumbled and fell, striking his head against the iron rail of the trolley track.

It seems manifest that the injury to the deceased may have occurred in the way suggested, and, as already observed, the fact of the deceased's unconsciousness or helplessness before the impact of the car fender is explicable upon the assumption that the injury did occur in some such way, and is explicable upon no other rational theory.

Nor does the physician's testimony respecting the absence of any appearance of injuries other than that to the head of the deceased possess any material importance in opposition to these views. Assuming that the physician made a particular examination for the purpose of discovering discolorations or bruises, and that such appearances were absent, nevertheless

their absence would be no stranger in case he stumbled and fell than if he was struck or pushed by a trolley car fender. In either instance his heavy clothing would probably protect him from severe contusions.

We are of the opinion that the conclusion reached by the jury that the death of Mr. Brink resulted from injuries inflicted by the car of the defendant's was not supported by the evidence.

The rule to show cause should be made absolute.